(No. 27226.—Judgment affirmed.)

BRAUER MACHINE AND SUPPLY COMPANY, for the use of
Bituminous Casualty Corporation, Appellant, *vs.* PARK-
HILL TRUCK COMPANY, Appellee.

*Opinion filed September 21, 1943.*

570

SMITH, McCOLLUM & RIGGLE, for appellant.

HARVEY D. McCOLLUM, and KRAMER, CAMPBELL, COSTELLO & WEICHERT, for appellee.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

This case is here on appeal from the Appellate Court, Fourth District. That court granted the appeal in accordance with section 75(2)(a) of the Civil Practice Act (Ill. Rev. Stat. 1941, chap. 110, par. 199.) The grounds for granting the appeal, as certified by the Appellate Court are, that the cause involves a construction of section 20a of an act entitled "An Act in relation to Motor Vehicles and to repeal a certain act therein named" (Ill. Rev. Stat. 1941, chap. 95½, par. 23;) that the construction of said section of the statute is one of such general public interest as to warrant the determination, by this court, of the questions involved.

It appears from the complaint that on December 20, 1938, appellant, Brauer Machine and Supply Company, was engaged in the business of selling supplies and equipment used in and about the drilling of oil wells and the repair and maintenance of equipment used in connection

therewith; that the place of business of appellant was located on Illinois State Highway No. 12, in Clay county, Illinois. This highway is also known as U. S. Highway No. 50. It is an improved highway, extending from East St. Louis, Illinois, to Vincennes, Indiana.

It was further alleged that appellant was engaged in an extra-hazardous occupation and was subject to the provisions of the Workmen's Compensation Act of this State (Ill. Rev. Stat. 1941, chap. 48, par. 138, *et seq.*;) that it had in its employ at that time one Emil Lars Lindstrom, who, as such employee, was also comprehended within, and subject to the provisions of, said Workmen's Compensation Act. It was alleged that appellee was an Oklahoma corporation, not licensed to do business in the State of Illinois; that it was engaged, as a general contractor, in the business of transporting and hauling oil-well equipment and materials, by motor-driven vehicles; that it was also subject to the provisions of said Workmen's Compensation Act; that it had in its employ at that time one J. L. Caskie; that Caskie, as such employee, was also subject to the provisions of said act.

It was further alleged that on the day in question, appellee by and through Caskie, employed by it as a truck driver, delivered to the premises and place of business of appellant, a certain steel structure; that said structure was transported by appellee from Tulsa, Oklahoma, by means of a certain motor truck over said highway in the State of Illinois, to the place of business of appellant; that Lindstrom, the employee of appellant, acting in the course of his employment, while assisting in unloading the steel structure from the truck, was injured through the negligence of Caskie, the employee of appellee; that appellant was liable to pay compensation to Lindstrom for such injuries, together with certain medical and hospital services rendered to him; that such compensation and medical and hospital expenses were paid by Bituminous Casualty Cor-

poration, its insurance carrier, for whose use the suit was brought, in accordance with the order and approval of the Industrial Commission.

It further appears that the premises occupied by appellant were located immediately south of, and adjacent to, the improved highway; that at the time the truck was being unloaded, it had reached the destination of the load which it carried. Both the truck and the load transported were, at the time the process of unloading was commenced, and at the time of the injury, entirely off the highway and on the private premises of appellant. Its journey had been wholly completed.

It was further alleged that said injuries were not caused by the negligence of appellant or its employees, or of Lindstrom, but were caused under circumstances creating a legal liability for damages in appellee; that the negligence of Caskie, appellee's servant and employee, caused said injuries. This suit was brought under section 29 of the Workmen's Compensation Act (Ill. Rev. Stat. 1941, chap. 48, par. 166) to recover the amount of compensation and expenses paid to and for Lindstrom.

The record shows that upon the filing of the complaint, a summons was duly issued for appellee, as defendant in the suit. This summons was returned by the sheriff of Clay county with his return endorsed thereon, showing that the defendant named therein was not found in his county. Thereafter, the summons was served on the Secretary of State, and notice thereof duly given to appellee, as required by said section 20a of the Motor Vehicle Act.

Appellee appeared under a special and limited appearance and filed a verified motion to quash the service of the summons. By its motion, it alleged that service of process could not be made in accordance with said section 20a of the Motor Vehicle Act, for the reason that the injury to Lindstrom, upon which the cause of action was based, did not result from the use or operation of a

motor vehicle over the highways of the State of Illinois, or occur in the course of such use and operation; that said injury occurred while appellee and Lindstrom, the employee of appellant, were unloading said structure from the motor vehicle of appellee, upon the premises of appellant; that at the time of the injury, said motor vehicle was not being used or operated on any public highway in this State; that the injury did not occur on any public highway and did not arise out of the use or operation of said motor vehicle over a public highway. The facts set out and relied upon in the motion to quash the service differed only in some minor details from the facts alleged in the complaint.

Upon a hearing, the trial court sustained the motion and quashed the service of summons on appellee. The order entered quashing the service, in so far as material, is as follows: "Motion to quash service of summons is sustained and it is ordered that service of such summons be quashed." Appellant prosecuted an appeal from that order to the Appellate Court for the Fourth District, where the order of the circuit court was affirmed.

At the threshold of the inquiry we are met with the question raised by appellee that the order appealed from was not a final appealable order. This question was not raised in the Appellate Court. Nevertheless, it being a question going to the jurisdiction of the court, it was not waived by the failure to urge it in that court. The parties could not, either by failing to raise the question, or by consent, confer jurisdiction on the Appellate Court to review the order of the circuit court if, in fact, the order appealed from was not one from which an appeal would lie. *Chicago Portrait Co.* v. *Chicago Crayon Co.* 217 Ill. 200.

The question of whether the order of the circuit court was one from which an appeal could be taken is a novel one. No authorities are cited by either of the parties, and we have found none, which are directly in point on

this question. It seems to be a question of first impression, which this court has never before been called upon to consider. It must be conceded that appeals will lie only from final judgments, orders or decrees, except in the few instances where the statute expressly provides for appeals from interlocutory orders.

It is settled that the right of appeal is purely statutory. (*People ex rel. Dombroski* v. *O'Connell,* 378 Ill. 346; *Durkin* v. *Hey,* 376 Ill. 292; *Johnson* v. *County of Cook,* 368 Ill. 160; *People ex rel. Bender* v. *Davis,* 365 Ill. 389; *Hall* v. *First National Bank,* 330 Ill. 234.) Section 77 of the Civil Practice Act limits the right of appeal to appeals from "final judgments, orders or decrees." (Ill. Rev. Stat. 1941, chap. 110, par. 201.) Other provisions of the statute allowing appeals from certain interlocutory orders are not material here.

It being definitely settled that appeals lie only from final orders or judgments, the decisive question here is: Was the order entered by the circuit court, quashing the service of summons, a final order or judgment? The term "final judgment," as ordinarily used, has a definite and fixed meaning. To be final and appealable a judgment must terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with the execution of the judgment. (*Rogers* v. *Barton,* 375 Ill. 611; *Rosenthal* v. *Board of Education,* 239 Ill. 29; *Brodhead* v. *Minges,* 198 Ill. 513.) While this general definition is well settled, and ordinarily applicable, as expressing the meaning of those words, nevertheless they are not always used in this restricted sense. The final decision from which an appeal lies does not necessarily mean such decision or decree, only, which finally determines all the issues presented by the pleadings. It may, with equal propriety, refer to the final determination of a collateral matter, distinct from the general sub-

ject of the litigation, but which, as between the parties to the particular issue, settles the rights of the parties. Such an order is final and appealable. (*Wyman* v. *Hageman,* 318 Ill. 64.) A final judgment is one which finally disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate branch thereof. *Sebree* v. *Sebree,* 293 Ill. 228.

In order to sustain an appeal there must be a final order or decree in a chancery suit or a final judgment in an action at law. A final judgment is one that finally disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate branch thereof. (*Bailey* v. *Conrad,* 271 Ill. 294; *City of Park Ridge* v. *Murphy,* 258 Ill. 365.) In Freeman on Judgments, vol. I, sec. 22, it is said: "According to the common law rule, by a final judgment is to be understood, not a final determination of the rights of the parties, but merely of the particular suit. Therefore, as will be seen in the next section, a judgment of dismissal or non-suit, though not determining the merits, may be final for the purposes of appeal." In section 27 in the same volume, the author says: "No hard-and-fast definition of 'final' judgment, applicable to all situations, can be given since its finality depends somewhat upon the purpose for which and the standpoint from which it is being considered, since it may be final for one purpose and not for another * * *. A judgment may be final so as to authorize an appeal from the court in which it was rendered, without being final as to the subject matter in litigation * * *."

In the Restatement of the Law of Judgments, section 40, the rule is stated as follows: "A judgment may be final although it does not finally determine the controversy between the parties with reference to the subject matter. Thus, a judgment for the defendant may be a final judgment, although it is not a judgment on the merits

and does not preclude the plaintiff from maintaining a second action against the defendants on the same cause of action."

"Final" means final as to the subject matter and conclusive of the rights of the parties. (Words and Phrases, vol. 3, p. 2772.) A final order is one affecting a substantial right in an action which determines and prevents a judgment. *Finley* v. *Prescott,* 104 Wis. 614, 80 N. W. 930, 47 L. R. A. 695.

In *Rosenberg Bros. & Co.* v. *Curtis Brown Co.* 260 U. S. 516, 67 L. ed. 372, the service of summons was quashed by the trial court on the ground that the defendant was a foreign corporation not subject to suit in the State where the action was brought and the service had. A motion to quash the service of the summons was granted. The only order entered was the order quashing the service. In disposing of the question of whether this was a final appealable order, the court said: "The order entered below, although in form, an order to quash the summons and not a dismissal of the suit, is a final judgment." In support of this holding the court cited *Goldey* v. *Morning News,* 156 U. S. 518, 39 L. ed. 517, 15 S. Ct. 559; *Cowley* v. *Mathieson Alkali Works,* 190 U. S. 406, 47 L. ed. 1113, 23 S. Ct. 728.

In *Mutual Reserve Fund Life Ass'n* v. *Smith,* 169 Ill. 264, this court said: "In *Terry* v. *Sharon,* 131 U. S. 46, it was said: 'The term "final decision," in said statute under consideration, does not mean, necessarily, such decisions or decrees only which finally determine all the issues presented by the pleadings; that while these are undoubtedly final decisions, the terms are not limited to them, but also apply to a final determination of a collateral matter distinct from the general subject of litigation, affecting only the parties to the particular controversy, and finally settles that controversy.' The same doctrine is announced in 2 Beach's Eq. Pr. sec. 948, and also in Black on Judg-

ments, sec. 21. In *Evans* v. *Dunn*, 26 Ohio St. 439, a decree which completely and finally disposed of a branch or part of a cause which was separate and distinct from other parts of the cause was held to be a final decree. The doctrine is recognized in *Hemphill* v. *Collins*, 117 Ill. 396."

Here, the order quashing the service of the summons was the determination of a collateral issue, distinct from the general subject matter of the litigation. Such order, however, finally settled that issue, as between the parties to this lawsuit. It disposed of all the rights of the parties to the action, upon a definite and separate branch of the controversy. It ended or concluded the matter as a final judgment. The effect of this order was a final adjudication that appellee was not subject to service of process in accordance with the provisions of the applicable section of the Motor Vehicle Act. It was a final determination that appellee was not amenable to the process of the court, served in that manner, and that the suit could not further proceed against it, upon such service. While this issue was separate and distinct from the general controversy involved in the case, it was no less decisive. The order of the court quashing the service finally disposed of the .case as to appellee. While it was not a final determination of the subject matter of the suit, it was a final determination of the subject matter of the order. The effect of the order was a final determination of the suit, notwithstanding the decision was only on one definite and separate branch of the controversy.

It is true, the order, in form, was only an order quashing the service of the summons. It was not an order dismissing the suit, nor was it in the form of a final judgment on the merits. Regardless of its form, however, it was a complete and final disposition of the case, based upon the conclusion the court had reached that appellee was not amenable to the service of process in the manner in which the summons was served. On that issue it was not

only as effectual and conclusive but it was as final as any decision upon the merits. The result was the same.

If it should be held that an order of this character is not appealable, then there would be no method by which a plaintiff could obtain a review of an order of the trial court quashing the service of process. In such case, no order could be entered, except an order quashing the service. The court would have no authority to enter a judgment dismissing the suit where the service of summons was quashed. No one would contend that, on motion to quash the service, the court would be authorized to enter a judgment dismissing the suit, or taxing costs against the plaintiff. The court could not adjudicate the subject matter involved in the suit. No such issue would or could be involved in a motion to quash the service. If an order quashing the service of process is not an appealable order, then the cause would be left on the docket of the trial court, undisposed of in form only, when, as a matter of fact, to all intents and purposes the cause was, in fact, finally disposed of. The plaintiff could not proceed further, except by obtaining service in some other manner. The facts alleged in this case, which must be accepted as true, show that service could not be obtained in any other manner. The order quashing the service was, therefore, as final and conclusive as any order which could have been entered. It was a decision on an issue which effectively barred any further proceedings by the plaintiff against the sole defendant in the cause. It was the only order the court was authorized to enter. To hold that no appeal would lie from such an order would be to leave appellant in the position of having its suit finally disposed of and deny to it the right to have that order reviewed. We do not believe the law contemplates such a result. The cases cited and relied upon by appellee, as sustaining its contention that the order quashing the service was not a final order, are not in point and are not persuasive.

The case of *Jones* v. *Pebler*, 371 Ill. 309, involved the question of the service of a summons under the same provision of the Motor Vehicle Act, on a nonresident defendant. It was there contended that the applicable provisions of section 20a of the Motor Vehicle Act did not apply where the motor vehicle was owned by a corporation and was being operated on the highways of this State by an agent, or employee of such corporation; that the provision for the service of process, found in said section of the Motor Vehicle Act, applied only to cases where the motor vehicle was being operated by the individual owner on the highways of this State. The trial court sustained the motion to quash the service of the summons on the nonresident owner, and dismissed the complaint as to such owner. This order of the trial court was affirmed by the Appellate Court. An appeal was perfected to this court on certificate of importance, granted by the Appellate Court. The judgment of the Appellate Court and the order of the circuit court were reversed by this court, and the cause remanded, with directions to overrule the motion to quash the service. No question was there raised as to the right of the court to enter the order dismissing the complaint, on motion to quash the service, or as to the finality of the order quashing the service.

It is our conclusion that the order appealed from was final. It disposed of the case upon a definite and separate branch of the controversy. It was final in effect and in the sense that an appeal therefrom was authorized by the language of the applicable section of the Civil Practice Act. The contention that the Appellate Court was without jurisdiction because the order appealed from was not a final appealable order, in our judgment, cannot be sustained.

This brings us to the question of whether the case is one falling within the provisions of section 20a of the Motor Vehicle Act. The applicable provisions of that section, so far as material here, are as follows: "The use and

operation by a non-resident of a motor vehicle over the highways of the State of Illinois, shall be deemed an appointment by such non-resident of the Secretary of State, to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him, growing out of such use or resulting in damage or loss to person or property, and said use or operation shall be a signification of his agreement that any such process against him which is so served, shall be of the same legal force and validity as though served upon him personally."

It is the contention of appellant that the unloading of the truck was an essential part of the project of appellee, and was, in itself, the reason for the use of the highways of this State; that the unloading of the truck at its place of destination was the object of its operation upon the highway, and was an integral part of the objective of appellee in such use; that the unloading was a part of appellee's contractual obligation, and such obligation could not be completed until the truck was unloaded; that the unloading was an incident of the transportation and constituted a part thereof as much as the actual movement of the truck over the highway; that during the process of the unloading the truck was still being used in carrying out the purpose of appellee's project and was then actually being used in the consummation of the use of the truck upon the highway.

The difficulty with appellant's position is that it is based on the proposition that the unloading was an incident of the contract of carriage. As between the shipper and the carrier, this is, no doubt, true. It does not necessarily follow, however, that such unloading was incident to the use of the highway. We are not here concerned with the relations or with any contract existing between the shipper and the carrier. The sole question here is whether the injury sustained by Lindstrom was one growing out of the use of the highway.

The provisions of section 20a of the Motor Vehicle Act limit the appointment of the Secretary of State, by the use of the highways by nonresidents, as attorney on whom process may be served, to actions or proceedings growing out of the use of the highways of this State. The addition of the words, "or resulting in damage or loss to person or property" was not intended to include another and different class of actions. Those words do not, in our opinion, enlarge or extend the act to cases where "such damage or loss to person or property" does not result from the use of the highways. The subject of the section is the appointment, by nonresidents operating motor vehicles on the highways of this State, of an agent on whom process may be served. It provides that "the use and operation by a non-resident of a motor vehicle over the highways of the State of Illinois shall be deemed an appointment by such non-resident of the Secretary of State to be his true and lawful attorney, upon whom may be served all legal process in any action or proceeding against him, growing out of such use, or resulting in damage or loss to person or property." The section then declares, "that said use or operation shall be a signification of his agreement that any process against him which is so served, shall be of the same legal force and validity as though served on him personally." The words "or resulting in damage or loss to person or property" refer only to damage or loss growing out of the use of the highways, as specifically limited by the preceding language of the section. These general words must be limited by the particular and specific words which precede them. The general words must be construed to include only actions for damages growing out of the use of the highways as indicated by the specific words which they follow. *Bullman* v. *City of Chicago,* 367 Ill. 217; *City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264; *Gundling* v. *City of Chicago,* 176 Ill. 340; *Cecil* v. *Green,* 161 Ill. 265; *Webber* v. *City*

*of Chicago,* 148 Ill. 313; *Ambler* v. *Whipple,* 139 Ill. 311; *Shirk* v. *People,* 121 Ill. 61.

The constitutionality of a similar statute of the State of Massachusetts was sustained by the Supreme Court of the United States on the ground that the implied consent of a nonresident, by the use of the highway, to the appoint-. ment of an attorney for service of process, was limited to proceedings growing out of accidents or collisions on a highway in which the nonresident may be involved. *Hess* v. *Pawloski,* 274 U. S. 352, 47 S. Ct. 632.

We think it is clear from the opinion in that case that a statute providing for such substituted service, if not limited to actions or proceedings growing out of accidents or collisions on the highways, would be invalid under section 2, article IV, of the Federal constitution.

The language of our statute is clear that such service can only be resorted to in actions or proceedings to recover damages or loss to persons or property, growing out of the use or operation, by a nonresident, of a motor vehicle on the highways of this State. To be valid under the above decision, this statute must be construed as limiting the substituted service therein provided for to actions or proceedings for the recovery of damages growing out of accidents or collisions occurring on the highways of this State. The argument that the effect of this construction is to limit the operation of the statute to the area within the boundaries of the highways, does not militate against this view. The statute, to be valid, must necessarily be so limited. This, of course, does not mean that the effect of the causative force from which the damages flow must actually be limited to the confines of the highway. It must, however, grow out of the use or operation of a motor vehicle on the highway. If the injury or damage claimed results from the use and operation of a motor vehicle on the highway, then the place where the injury or damage to the person or property of another actually oc-

curred would be wholly immaterial. It is only necessary
that the causative force originate in the use or operation
of the vehicle on the highway. For. instance, if in the use
and operation of a motor vehicle on the highway, through
negligence or otherwise, something occurs which would
cause such vehicle, or a part of its load, to leave the high-
way and, as a result, injury to the person or damage to the
property of another occurs outside the boundaries of the
highway, such injury or damage would clearly grow out of
the use and operation of the vehicle on the highway. Innu-
merable other illustrations might be suggested where an in-
jury occurs or damages result entirely off the highway, but
where the causative force grew out of the use and opera-
tion of the vehicle on the highway. It makes no difference
where the injury actually occurs if it may be attributed to
the use of the highway and naturally flows therefrom.

Here, the truck had left the highway prior to the time
the process of the unloading was begun. Both the truck
and the load were entirely off the highway and wholly
upon private property at the time the injury occurred. The
negligent act which is alleged to have caused the injury
was in no way connected with the use of the highway. It,
in no sense, arose or grew out of the use of the motor
vehicle on the highway. The causative force which caused
the injury to Lindstrom did not originate on the highway,
nor can it be attributed to the use or operation of the
motor vehicle on the highway. True, as between the
shipper and the carrier, the unloading may have been inci-
dent to the contract for the transportation of the load over
the highway. This was a matter of contract between the
shipper and the carrier in which the statute was in no-
wise involved. It was not, however, incident to the use
or operation of the vehicle on the highway. To extend the
operation of the statute to all the acts incident to the con-
tract of transportation, without any limit as to the causa-
tive force or the time or place where the injury occurred,

would give to it a construction which would violate the privileges-and-immunities clause of the constitution of the United States (sec. 2, art. IV,) and render the section, in this respect, invalid.

The language of the statute does not warrant such construction. Entirely aside from any constitutional restrictions, the language of the section of the Motor Vehicle Act here involved clearly limits the right to service of process on the Secretary of State to actions where the injury or damage results from the use and operation of a motor vehicle, by a nonresident, on the highways of this State. This case does not come within the class of actions comprehended within the provisions of section 20a of the Motor Vehicle Act. The trial court did not err in quashing the service.

The judgment of the Appellate Court affirming the order of the circuit court of Clay county is affirmed.

*Judgment affirmed.*